UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODNEY WALKER,                                      CIVIL NO. 12-940 (RHK/JSM)

      Petitioner,

v.                                                      <u>REPORT AND RECOMMENDATION</u>

SCOTT P. FISHER, Warden

      Respondent.

Rodney Walker, Federal Correctional Institution – Sandstone, P. O. Box 999, Sandstone, Minnesota, 55072, Petitioner, <u>pro</u> <u>se.</u>

D. Gerald Wilhelm, Esq., Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.

This matter is before the undersigned United States Magistrate Judge on Rodney Walker's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Respondent filed a response contending that the Petition should be denied. [Docket No. 4].

The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court finds that Petitioner's habeas corpus petition should be DENIED and this matter DISMISSED WITH PREJUDICE.

**I.  BACKGROUND**

Petitioner Rodney Walker ("Walker") is serving a 180-month sentence, followed by five years of supervised release following his conviction for Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1). Declaration of Julie Groteboer ("Groteboer

1

Decl.") ¶ 3 [Docket No. 5]; Attach. A (Public Information Data) [Docket No. 5-1].  Walker is presently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone").  Groteboer Decl., ¶3.  Walker's projected release date is August 31, 2013, via Good Conduct Time release. Id.

Walker was reviewed for Residential Reentry Center ("RRC") placement on March 1, 2012, pursuant to the Second Chance Act ("SCA") of 2007.  Id., ¶ 6, Attach. B (Review for Residential Reentry Center).  Staff recommended to the Community Corrections Manager's Office that Walker be given 150-180 days of RRC placement and that this was a "sufficient duration to provide the greatest likelihood of successful integration into the community."  Groteboer Decl., ¶8.  The staff's recommendation was based on their determination for RRC placement on the following factors: (1) the resources of the facility contemplated; (2) the nature and circumstances of Walker's offense; (3) any statement by the sentencing court that imposed the sentence against Walker; (4) the fact that Walker was sentenced within the Sentencing Commission's guideline range for the offense for which he was convicted; and (5) Walker's history and characteristics.  Id., ¶¶ 2-4, Attach. B.

Walker has not yet been referred by staff for RRC placement as his projected release date is not until August 31, 2013.  Id., ¶10.  The Community Corrections Manager will consider the staff's recommendation and make the final determination regarding the RCC placement date.  Id.

Walker filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that the Bureau of Prisons ("BOP") denied him "the incentive to receive consideration for the 12 month Halfway House transfer placement pursuant to the Second Chance Act ("The Act") after Petitioner has successfully completed the 'Life Skills Program' which are a

legal requirement of 42 U.S. sec.17541(a)(1)(G)." Petition for Writ of Habeas Corpus for Persons in Federal Custody ("Petition"), p. 3 [Docket No. 1]. Therefore, he "is being illegally confined within the F.B.O.P. [Federal Bureau of Prisons] 6 months longer than allowed under The Act and sec. 17541 in direct violation of the laws of the United States and the due-process clause of the U.S. Constitution." Id. Walker claimed that his release date with the incentive to the halfway house should be August 2012, and that the denial of the incentive means that he will not be released until February 2013. Id. Walker admitted he had not exhausted his administrative remedies "because denial at every step, expected requests for extensions of time, upcoming Holidays and the ultimate filing in this Court "would cause the time to run into the extra 6 months [he] is requesting and render the entire claim moot and pointless." Id.

## II.     STATUTORY AND REGULATORY BACKGROUND

### A.     Background to Second Chance Act of 2007, 18 U.S.C. § 3624(c)

The starting place for the history leading up the Second Chance Act of 2007 is a different statute, 18 U.S.C. § 3621(b), which provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> (1)   the resources of the facility contemplated;
> (2)   the nature and circumstances of the offense;
> (3)   the history and characteristics of the prisoner;
> (4)   any statement by the court that imposed the sentence. . . .
> (5)   any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.

> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Another statute, 18 U.S.C. § 3624(c), directs the BOP to give special attention to the housing assignments of prisoners who are approaching the end of their sentences to help them successfully re-enter society upon being released from custody. Before April 9, 2008, § 3624(c), provided in relevant part:

> (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, <u>not to exceed six months, of the last ten per centum of the term to be served</u> under conditions that will afford the Prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c) (emphasis added), <u>amended by</u> 18 U.S.C. § 3624(c) (April 9, 2008).

In December 1998, the BOP issued Program Statement 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedures." Program Statement 7310.04 directed the BOP to make RRC recommendations "based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly," and stated that a number of factors must be weighed in determining the length of RRC placement including, the inmates "individual needs and existing community resources." Program Statement 7310.04 (Dec. 16, 1998), p. 7. <u>See</u> http://www.bop.gov/policy/progstat/7310_004.pdf. In addition, the Statement provided that the BOP "may place an inmate in a CCC for

4

more than the 'last ten per centum of the term,' or more than six months if appropriate" (id. at 4),[1] but also stated that while "placement beyond 180 days is highly unusual, it is possible with 'extraordinary justification.' In such circumstances, the Warden shall contact the Regional Director for approval. . . ." Id. at 8.

Thus, before December 2002, the BOP understood that a RRC was a "place of imprisonment," and that, pursuant to § 3621(b), a federal prisoner could be assigned to a RRC at any time during his sentence, although customarily, federal prisoners were sent to RRCs during the last six months of their sentences to meet the transitional requirements imposed by § 3624(c). But on December 13, 2002, the Office of Legal Counsel ("OLC") of the United States Department of Justice issued a memorandum, which declared that this longstanding interpretation and implementation of the housing assignment statutes was incorrect. Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment, 2002 WL 31940146 (Dec. 13, 2002).

The OLC concluded that the term "place of imprisonment" could not include a RRC assignment, which meant that prisoners could not be assigned to RRCs pursuant

---

[1] As the Eighth Circuit explained in Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008):

> [Program Statement 7310.04] opined that an RRC is a "penal or correctional facility" within the meaning of § 3621(b), and implicitly assumed that an RRC also is a "place of imprisonment." The statement reasoned that § 3624(c) did not restrict the use of RRCs to the last ten percent of the inmate's term, because § 3621(b) allows the BOP generally to "designate any available penal or correctional facility."

Id. at 754. The Eighth Circuit in Miller upheld the "extraordinary justification requirement" set forth in Program Statement 7310.04.

5

to the general housing authority provided by § 3621(b). Instead, the OLC decided that an inmate could be transferred to a RRC only as part of the pre-release programming mandated by § 3624(c). According to the Memorandum, federal law prohibited offenders from being assigned directly to halfway houses, even though that practice has been used for many years, in many cases, with the universal approval of U.S. Attorneys, the BOP, and the federal judiciary.

The OLC Memorandum also included a brief reference to the BOP's longstanding practice of assigning federal prisoners to RRCs for the final six months of their sentences. The Memorandum indicated that § 3624(c) authorized the BOP to assign a prisoner to a half-way house <u>only for the lesser</u> of (a) the last six months of his sentence, or (b) the last ten percent of his sentence.

The OLC Memorandum prompted Deputy Attorney General Larry D. Thompson to write his own Memorandum to the Director of the BOP. That second Memorandum, which is dated December 16, 2002 (just three days after the OLC Memorandum) included the following paragraph addressing the BOP's practice of sending prisoners to halfway houses for the last six months of their sentences:

> The OLC opinion additionally notes that, while BOP does have limited statutory authority in 18 U.S.C. § 3624(c) to transfer an offender to a CCC[2] prior to his release so as to 'afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community,' there are firm restrictions on such transfers. Specifically, the transfer may not exceed the <u>lesser</u> of (i) the last ten percent of the sentence imposed on the offender, i.e., the period of time in which the offender was committed to the custody of the BOP, or (ii) six months. The OLC opinion concludes that there are no bases for disregarding these time limitations."

---

[2]   RRCs were known at the time as "Community Correctional Centers."

(emphasis in the original).³

In response to this paragraph of the Thompson Memorandum, as well as the earlier OLC Memorandum, the BOP immediately changed its policies and practices for assigning prisoners to RRCs.  The BOP announced that on a going-forward basis, it would exercise its authority under § 3624(c) based on its new understanding of the law—i.e., that the statute itself allows a prisoner to be placed in a RRC only for the lesser of the last ten percent of his sentence or the last six months of his sentence.

Thereafter, federal prisoners challenged the BOP's new interpretation of §3624(c) in numerous federal court cases.  Some courts agreed with the BOP's new understanding and implementation of § 3624(c), but many others did not.  The issue came before the Eighth Circuit in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004).

In Elwood, the court rejected the BOP's restrictive interpretations of §§ 3621(b) and 3624(c).  The court held that "§ 3621(b) gives the BOP the discretion to transfer prisoners to CCCs at any time during their incarceration."  Id. at 847 (emphasis added).  The court further held that, pursuant to § 3624(c), "the BOP is required to place prisoners in 'conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community' during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable [; but] [t]his duty shall not extend beyond the last six months of the prisoner's sentence."  Id. (emphasis added); see also Miller, 527 F.3d at 755 ("Elwood [held] that § 3624(c) requires the BOP, when practicable, to transfer a prisoner to an RRC for a reasonable part of the last ten percent

---

³       The Thompson Memorandum of December 16, 2002, can be found at http://www.usdoj.gov/dag/readingroom/imprisonment.htm.  The section of the Memorandum quoted in the text is found at p. 2, § II.

7

of his sentence, not to exceed six months, but …§ 3624(c) does not forbid the BOP from designating a prisoner to an RRC for more than ten percent of his sentence pursuant to its authority under § 3621(b).") (citation omitted) (emphasis in original).

In response to Elwood and a similar decision from the First Circuit, Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004), the BOP re-examined its RRC assignment policies, and on February 14, 2005, it adopted 28 C.F.R. §§ 570.20 and .21, which categorically limited an inmate's eligibility for pre-release to community confinement during the last ten percent of the prison sentence being served, not to exceed six months. See Miller, 527 F.3d at 755.

On April 6, 2006, the Eighth Circuit declared regulations §§ 570.20 and 570.21 invalid and in conflict with 28 U.S.C. § 3621(b). See Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2008). The Eighth Circuit, like several other circuits,[4] held that the BOP could not categorically determine the amount of time that a prisoner would be allowed to spend in community confinement, but to comply with 28 U.S.C. § 3621(b), must exercise its discretion on a case-by-case basis and consider the particular circumstances of the individual prisoner. In light of the various decisions invalidating §§570.20 and 570.21, the BOP changed its position in the Eighth Circuit and in those circuits that had similarly declared the regulations invalid, by resorting to back to Program Statement 7310.04, which permitted RRC placements for longer than

---

[4] The following courts also found the regulations to be invalid: Rodriguez v. Smith, 541 F.3d 1180, 1184-1189 (9th Cir. 2008); Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 85-87 (2d Cir. 2006); and Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 244 (3d Cir. 2005). On the other hand, the First Circuit found that §§ 570.20 and 570.21 were a reasonable exercise of BOP's discretion in carrying out its statutory duties under § 3621(b). See Muniz v. Sabol, 517 F.3d 29, 38-40 (1st Cir. 2008), cert. denied 555 U.S. 853 (Oct. 6, 2008).

180 days only with "extraordinary justification." See Miller, 527 F.3d at 755.

Ultimately, any differences of opinion by the circuits were resolved by the Second Chance Act of 2007, which amended 18 U.S.C. § 3624(c) effective April 9, 2008. 42 U.S.C. § 17501 (Second Chance Act, Pub. L. 110-199 (2008)). Section 3624(c) now provides in relevant part:

> (1) In General. The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> * * *
>
> (4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
> * * *
>
> (6) Issuance of Regulations. The Director of the BOP shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the BOP is--
>
> (A) conducted in a manner consistent with section 3621(b) of this title;
>
> (B) determined on an individual basis; and
>
> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c)(1), (c)(4), (c)(6) (emphasis added).

The plain language of the amendment to § 3624(c) increased the maximum amount of pre-release placement time from six months to 12 months and required

9

implementing regulations by the BOP designed to ensure that placement in a RRC by the BOP was done in a manner that is consistent with § 3621(b), determined on an individual basis, and was of a sufficient duration to "provide the greatest likelihood of successful reintegration into the community." As before, § 3624(c) provided the BOP with discretion to determine whether and how long an inmate should spend in a halfway house before his release, so long as the pre-release placement was practicable and the BOP considered the factors set forth in § 3621(b).

Relevant to this case, the SCA also authorized the BOP to establish "a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, … to provide incentives for prisoner participation in skills development programs," and gave the BOP discretion to use RRC placements as an incentive for prisoner participation in reentry and educational programs. 42 U.S.C. § 17541(a)(1)(G), (2)(A)

### B. April 14, 2008 Memorandum from the BOP's General Counsel to Chief Executive Officers

Five days after enactment of the SCA, the BOP issued a Memorandum to Chief Executive Officers titled "Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007" ("April 14, 2008 Memorandum"). The April 14, 2008, Memorandum provided guidance to BOP staff for RRC placement, as follows:

> **What procedural adjustments to current policy are required?**
>
> Staff must comply with PS 7310.04 in considering inmates for pre-release RRC placements, with the following adjustments:
>
> * * *

**(C)   Criteria for Pre-Release RRC Placements** -- The Act requires that inmates be individually considered for pre-release RRC placements using the following five-factor criteria from 18 U.S.C. § 3621(b):
(1)   The resources of the facility contemplated;
(2)   The nature and circumstances of the offense;
(3)   The history and characteristics of the prisoner;
(4)   Any statement by the court that imposed the sentence:
    (a)   concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (b)   recommending a type of penal or correctional facility as appropriate; and
(5)   Any pertinent policy statement issued by the U.S. Sentencing Commission.

\* \* \*

[I]n accordance with the Act, each individual inmate's pre-release RRC decision must be analyzed and supported under the five-factor criteria.

**Additionally**, the Act requires staff to ensure that each pre-release RRC placement decision is "of sufficient duration to provide the greatest likelihood of successful integration into the community." See 18 U.S.C. § 3624 (c)(6)(C) (amended). This means Bureau staff <u>must</u> approach every individual inmate's assessment with the understanding that he/she is now <u>eligible</u> for a maximum of 12 months pre-lease RRC placement. Provisions in PS 7310.04 that reflect any other possible maximum timeframe must be ignored.

**(D)   Regional Director Approval Required for Pre-Release RRC Placement Beyond Six Months** -- While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

Arthur v. Roal, Civ. No. 09-3043 (RHK/JSM), 2010 WL 3025019 at *5-6 (D. Minn. July 6, 2010) (quoting April 14, 2008, Memo).

### C. BOP Regulations Issued Pursuant to the Second Chance Act

On October 21, 2008, the BOP adopted new interim regulations, pursuant to § 3624(c), which revised 28 C.F.R. §§ 570.21 and 570.22 as follows:

> § 570.21 Time-frames.
>
> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, <u>not to exceed twelve months</u>.
>
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.
>
> § 570.22 Designation.
>
> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

Pre-Release Community Confinement, 73 Fed. Reg. 62,440, 64,443 (Oct. 21, 2008) (emphasis added).

Absent from these regulations is any mention of the statement found in the April 18, 2008 Memorandum that inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less, or the requirement that the

12

Regional Director's written concurrence must be obtained before submitting the placement to the RRC.

> **D.     November 14, 2008 Memorandum from the BOP's General Counsel to Chief Executive Officers**

On November 14, 2008, the BOP issued a Memorandum to Chief Executive Officers which provided, in relevant part, the guidance to BOP staff when an inmate requested transfer to a RRC and more than 12 months remained from an inmate's projected release date. In a footnote to the November 14, 2008 Memorandum, the BOP stated:

> Previous guidance titled Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007, was issued April 14, 2008, and remains in full effect. That guidance instructs staff how to review inmates for pre-release RRC placement during their last 12-months of their incarceration…. Regulations relating to that guidance were issued on October 21, 2008, and are located at 28 C.F.R. §§ 570.21 and 570.22.

Arthur, 2010 WL 3025019 at *5-6 (quoting November 14, 2008 Memo).

Like Program Statement 7310.04 and consistent with the April 14, 2008 Memorandum, the November 14, 2008 Memorandum reminded BOP officials that for inmates requesting transfer to a RRC where more than 12 months remained on an inmate's projected release date, a "RRC placement beyond six months should only occur <u>when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs</u>." Id. at p. 3 (emphasis added). In short, the BOP's position with respect to inmates seeking RRC placement prior to their last 12 months of incarceration and for a period in excess of six months was the same as it was before the enactment of the Second Chance Act—it could only occur when unusual or

extraordinary circumstances justified such a placement and the Regional Director's permission had been obtained.

On June 24, 2010, the BOP issued another guidance memorandum. This memorandum removed the requirement that the Regional Director approve any placements exceeding 6 months.[5]

### III. ANALYSIS

#### A. Exhaustion of Administrative Remedies

On April 16, 2012, Walker filed the instant habeas petition. In response, the Government argued that Walker's Petition should be dismissed because he failed to exhaust his administrative remedies. See United States' Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Resp. Mem."), pp. 9-11. [Docket No. 4].

On March 6, 2012, Walker sent an Inmate Request to Staff to case manager Fogt, stating he did not want to through "this meeting about the extra six months – Halfway House!" Petition, p. 11; Groteboer Decl., ¶ 9, Ex. C. Fogt replied on March 7, 2102, stating that the additional 120 days in RRC placement would only be implemented if Walker needed them at the end of the initial 180 days. Id. On March 13, 2012, Walker submitted an "Administrative Remedy Procedure for Inmates Informal Resolution" form, asking that he be granted the statutory maximum of twelve months RRC placement without meeting with the Warden. Petition, pp. 9-10. Walker's correctional counselor responded in writing that "in accordance with the 2nd Chance Act. . . a decision was made to refer you for 150-180 days RRC placement. Should you

---

[5]http://www.famm.org/Repository/Files/BOP%20Halfway%20House%20Guidance%206. 24.10.pdf. The portion cited is found on page 2.

need additional time, the USPO can request additional Public Law placement. An interview with the Warden would be a part of the decision making process had you been referred for over 6 months placement." Id., p. 9.

On March 26, 2012, Walker submitted a Request for Administrative Remedy, asking for reconsideration of his request for maximum statutory placement of twelve months' placement in a RRC, and that he not be required to meet with the Warden in connection with his request. Id., p. 12. According to Walker, he "should receive the full year without extra hurdles," and he warned that deprivation of his liberty without due process under the Fifth Amendment could create a constitutional issue if he was not granted the relief requested. Id. Walker's Request was denied on April 24, 2012 and Walker did not file an appeal at the Regional or Central Office levels. Groetboer Decl., ¶11.

Walker acknowledged that he did not exhaust his administrative remedies, but claimed that he should be excused from complying with the exhaustion requirement as the time necessary to exhaust those remedies would exceed the time he was requesting and render his claim moot. Petition, p. 3.

The BOP uses a three tier administrative remedy program pursuant to 28 C.F.R. §§ 542.10-.19 to allow inmates to seek formal review of any issue relating to the inmate's confinement. An inmate begins the administrative-remedy process by pursuing informal resolution through prison staff. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the decision at the prison level, at the second tier, he may appeal that decision to the Regional Director, and if he is still dissatisfied with the response of the Regional Director, at the third tier, he may appeal the Regional Director's decision to the General Counsel at the BOP's Central Office. 28 C.F.R. § 542.15(a). A response from

the General Counsel completes the internal appeal process. Id.

While exhaustion in § 2241 cases is generally required (see McCarthy v. Madigan, 503 U.S. 140, 144 (1992)), and in this case, it is evident that Walker did not exhaust his claims through the BOP's three-tier administrative remedy program, this Court may nonetheless proceed to address the merits of Walker's petition without deciding whether exhaustion is futile as to Walker claims. Lueth v. Beach, 498 F.3d 795, 797 n. 3 (8th Cir. 2007) (citations omitted). That is the course of action this Court has decided to take because it has concluded that Walker's Petition fails on the merits.

> **B.** **Walker Does Not Have a Constitutionally Protected Right to RRC Placement for 12 Months**

Walker has asked that Respondent immediately reconsider his designation to a RRC so that he can receive a full 12 months of RRC placement. Petition, p. 3. To the extent that Walker is claiming that he is entitled to 12 months of RRC placement, his Petition must be denied. There is nothing in the plain text of 18 U.S.C. §§ 3621(b) or 3264(c) or 42 U.S.C. § 17541 that gives inmates the right to 12 months of RRC placement. Section 3621(b) gives the BOP the discretion "at any time" to place an inmate into "any available penal or correctional facility" and to "direct the transfer of an inmate from one penal or correctional facility to another." 18 U.S.C. § 3621(b). "[Section] 3624(c) does not require placement in a [RRC]. It only obligates the BOP to facilitate the prisoner's transition from the prison system." Elwood, 386 F.3d at 847.[6]

Section 3264(c) merely provides that pre-release placement into a RRC cannot exceed 12 months. See 18 U.S.C. § 3264(c). The prisoner reentry incentive program

---

[6] The Eighth Circuit in Elwood found that the BOP has discretion to transfer prisoners at any time during their incarceration, but only has the duty to consider a transfer to a RRC in the last six months of a sentence. See Elwood, 386 F.3d at 847 (finding that the BOP's duty to place prisoners in conditions that will prepare the prisoner for re-entry into the community "shall not extend beyond the last six months of the prisoner's sentence.").

16

under 42 U.S.C. § 17541(a)(2)(A), directs the BOP to establish "[i]ncentives for a prisoner who participates in reentry and skills development programs which may, <u>at the discretion of the Director</u>, include—(A) the maximum allowable period in a community confinement that would provide for the 'maximum allowable period in a community facility.'" 42 U.S.C. § 17541(a)(2)(A) (emphasis added).

As such, even though Walker engaged in education and reentry programs (<u>see</u> Groteboer Decl. ¶ 7; Attach. B (Review for Residential Reentry Center)), the "statute does not require that the BOP make maximum RRC placement an incentive for participating in a reentry program. Rather, the Statute merely authorizes the BOP to make maximum RRC placement an incentive, <u>in its own discretion</u>." <u>Brown v. Rios</u>, Civ. No. 08-5752 (JRT/RLE), 2009 WL 5030768 at *7 (D. Minn. Dec. 14, 2009) (citations omitted) (emphasis added).

Pursuant to the SCA, the BOP unit staff reviewed Walker for RRC placement using the five factors enumerated in 18 U.S.C. § 3621(b). <u>See</u> Groteboer Decl. ¶ 6; Attach. B. Applying the first factor, 18 U.S.C. § 3621(b), the staff considered the resources of the facility contemplated and how those aligned with Walker's needs. <u>Id</u>. The resources they specifically considered included: job search, transportation, clothing assistance, driver's license, housing search, drug/alcohol aftercare, medical resources, education programs, and mental health aftercare programs. <u>Id</u>. Applying the second factor, 18 U.S.C. § 3621(b)(2), the staff considered the nature and circumstances of Walker's offense, specifically that he was convicted being in possession of three firearms after previously being convicted of a felony. <u>Id</u>.

Applying the third factor, 18 U.S.C. § 3621(b)(3), the staff considered Walker's history and characteristics, specifically his participation in vocational and education programs, his participation in the Family Reunion Program, his good work performance,

17

his completion of some counseling programs, his good participation in the Release Preparation Program, his discipline history, and his lengthy relevant prior record. Id.

Applying the first part of the fourth factor, 18 U.S.C. § 3621(b)(4)(A), the staff considered any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, of which there was none. Id. Applying the second part of the fourth factor, 18 U.S.C. § 3621(b)(4)(B), the staff considered any statement by the court that imposed the sentence recommending a type of penal or correctional facility as appropriate, specifically the recommendation that 120 days of RRC be imposed if necessary. Id.

Applying the fifth factor, 18 U.S.C. § 3621(b)(5), the staff considered any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28, specifically that Walker was sentenced within the guideline range. Id.

All the evidence presented indicates that the BOP unit staff properly and thoroughly reviewed Walker for RRC placement pursuant to the required criteria before making their recommendation. Thus, Walker has received all that he is entitled to under the SCA.

In summary, the decision to place Walker, or any other inmate, in an RRC is at the discretion of the BOP. No inmate has a right to any specific period of RRC placement beyond the recommendation of the BOP. Walker has the right to be evaluated for RRC placement in the manner proscribed in federal law and BOP regulations, and that was done here. All the evidence before this Court indicates that the BOP followed all laws and regulations in evaluating Walker for RRC placement and recommending 150-180 days of RRC placement. For all of the reasons stated above, Walker's motion should be denied.

## IV.  RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED** and the matter **DISMISSED WITH PREJUDICE.**

Dated:    June 14, 2012

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties on or before **June 28, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.